IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANCISCO J. MASSO-TORRELLAS, ET AL.,

　Plaintiffs,

　　　　　　v.                                    CIVIL NO. 15-1522 (PAD)

MUNICIPALITY OF TOA ALTA, ET AL.,

　Defendants.

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

　　　This is an action under Federal and Puerto Rico law against the Municipality of Toa Alta and several individuals[1] for breach of contract, collection of monies and damages resulting from an allegedly illegal seizure of property in retaliation for issuance of a notice of default against the Municipality. Before the court is defendants' "Official Capacity Defendants' Motion to Dismiss" (Docket No. 20), which plaintiffs opposed (Docket No. 34).[2] For the reasons explained below, defendants' motion is GRANTED.

### I.　　PROCEDURAL BACKGROUND

**A. The Agreements**

　　　The case originates in a construction contract, divided into two phases and agreements, to build on the Municipality's property a Terminal for Taxis and a Multiuse Building. The contract

---

[1] Named and unnamed. The only defendants listed in the complaint are the Municipality of Toa Alta and its mayor, Clemente Agosto Lugardo in his personal and official capacity; his wife, Yaritza Rosario-Soto; and the Agosto-Rosario conjugal partnership (Docket No. 1 at ¶¶ 3.4-3.5, 3.8). Plaintiffs also sued some "indeterminate number of unnamed Municipal Police Officers, and other Municipal officials," and their spouses. Id. at ¶¶ 3.11-3.14, plus "any" other unknown defendants that might be liable and any insurance company that may be responsible for the facts alleged in the complaint. Id. at ¶¶ 3.16 and 3.17. To date, however, the complaint has not been amended to include the names of those individuals.

[2] The motion to dismiss was originally filed by the Municipality of Toa Alta and Agosto-Lugardo, in his official capacity as the mayor of the Municipality (Docket No. 20). Subsequently, Agosto-Lugardo moved to join the request to dismiss in his individual capacity (Docket No. 27), which the court granted (Docket No. 28).

Case 3:15-cv-01522-PAD   Document 40   Filed 02/19/16   Page 2 of 7

<u>Francisco J. Masso-Torrellas</u>, *et al.* v. <u>Municipality of Toa Alta</u>, *et al.*
Civil No. 15-1522 (PAD)
Memorandum and Order
Page 2

was awarded to OSSAM Construction, Corp. on May 7, 2010.[3]  Phase I of the project was to be made pursuant to a Work Performance Contract executed on September 10, 2010 (Contract No. 2011-000116), whereas Phase II, was subject to a Work Performance Contract executed on September 4, 2012 (Contract No. 2013-000105).  Still, both contracts contain the following clause:

> THIRTY FIFTH: MEDIATION. In the event that any controversy arises from the interpretation or of any other nature among the parties with respect to any matter related to this contract, it shall be previously be [sic] required that before resorting to a judicial forum for the adjudication of their rights, that the parties exhaust a mediation procedure.  The Municipality and the party of the Second Part [sic] will at all times attempt to resolve their claims and disputes among themselves in food [sic] faith and, if unable to reach an agreement, they bind themselves to resolving the controversy or dispute through mediation. The parties hereto agree that if any controversy arises that they will appoint a single mediator and that the expenses incurred will be divided among the parties. (Docket No. 31-1 at p. 10 and 31-2 at pp. 10-11 and Docket No. 31, Exhs. 1 and 2).[4]

**B. Termination Notice of Phase II**

From September to December of 2014, OSSAM submitted for payment, certifications of completed work for Phase II, which the Municipality allegedly inspected, verified and approved. <u>Id.</u> at ¶ 4.5.  Because OSSAM did not receive any payment, on January 20, 2015 it issued a notice of default against the Municipality. <u>Id.</u> at ¶ 4.8.  In response, on February 5, 2015, the Municipality terminated the agreement, <u>Id.</u> at ¶ 4.9, informing OSSAM that municipal officials would enter and take over the property at a date and time specified therein. <u>Id.</u> at ¶ 4.10.[5]

---

[3] Nevertheless, the complaint was filed by OSSAM Construction, Inc. (Docket No. 1 at ¶ 3.3).

[4] Although plaintiffs allege that both agreements contain the same provision, the court notes that the agreement for Phase I (but not the one involving Phase II), includes a last sentence pertaining to the finality of the mediator's decision, to wit: "[t]he mediator's decision will be final and firm" (Docket No. 31-1 at p. 10).

[5] Paragraph 4.9 of the complaint avers that the Municipality cancelled the contract on February 4, 2015, "via a letter dated February 5, 2015, sent through electronic mail at 12:00 p.m. (noon)."  At the end of the day, whether the agreement was terminated on February 4th or 5th is irrelevant for purposes of this Memorandum and Order.

Case 3:15-cv-01522-PAD   Document 40   Filed 02/19/16   Page 3 of 7

Francisco J. Masso-Torrellas, *et al.* v. Municipality of Toa Alta, *et al.*
Civil No. 15-1522 (PAD)
Memorandum and Order
Page 3

### C. Post-termination events

Minutes after Municipality's response, several individuals acting under color of law and official authority arrived at the site, seizing OSSAM's property, equipment and materials. Id. at ¶ 4.12. Further, armed municipal police officers blocked all of the site's entrances and exits, stating that no property could be removed from the premises without the Municipality's express authorization. Id. at ¶ 4.13.

The next day, OSSAM was allowed to remove some of its property, equipment and materials, prior inspection and approval from the Municipality. Id. at ¶¶ 4.14-4.16. The municipal police, however, remained in the site 24 hours a day until February 18, 2015, Id. at ¶ 4.17. Then, the Municipality allowed OSSAM to retrieve most of the property, equipment and materials it had on site. Id. at ¶ 4.20, ¶ 4.21.

With this background, plaintiffs complain of harassment, oppression, abuse of power, breach of contract, illegal interference with contractual relations, and of damage to their professional and personal realms. Id. at ¶¶ 5.1-5.13, 6.1-6.5, 7.1-7.3, 8.1-8.8, 9.1-9.3, 10.1-10.4. They claim defendants owe them money, acted in direct retaliation for plaintiffs' attempt to collect a valid, legal and liquid debt, and violated the Fourth, Fifth and Fourteenth Amendments of the Constitution and state law.[6] In turn, defendants argue the case should be dismissed because, in their view, this is a simple breach of contract dispute which the plaintiffs want to convert into a federal case; that there is no plausible facts to support a claim under Section 1983 nor a

---

[6] In paragraph 1.1 of the Complaint ("Nature of this Action"), plaintiffs claim the action is brought under the First, Fifth and Fourteenth Amendments. The same allegation is made in paragraph 2.1 ("Jurisdiction and Venue"). But under the "First Cause of Action," plaintiffs claim violation of their Fourth, Fifth and Fourteenth Amendments, without reference to the First Amendment. In fact, the complaint does not include a single allegation in support of a First Amendment claim. As such, the court will consider the complaint as one filed under the Fourth, Fifth and Fourteenth Amendments, in addition to state law.

Case 3:15-cv-01522-PAD   Document 40   Filed 02/19/16   Page 4 of 7

Francisco J. Masso-Torrellas, *et al.* v. Municipality of Toa Alta, *et al.*
Civil No. 15-1522 (PAD)
Memorandum and Order
Page 4

constitutional violation; and OSSAM has not complied with the contracts' "mandatory arbitration clause" Docket No. 20, at pp. 14-18.[7]

## II.     STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(1) states that a party may seek dismissal of an action for lack of subject matter jurisdiction. This rule is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including the existence of a valid arbitration agreement covering the dispute. Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n. 21 (1st Cir.1998) ("a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable").

A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate it. Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996); Prestige Capital Corp. v. Pipeliners of Puerto Rico, Inc., 849 F.Supp.2d 240 (D.P.R. 2012). The court may consider extrinsic materials in the process of evaluating a motion to dismiss under Rule 12(b)(1). Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 37 (1st Cir. 2000).

## III.    DISCUSSION

**A.     The FAA**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), was enacted "to overcome a history of judicial hostility to arbitration agreements." It reflects "the fundamental principle that an agreement to arbitrate is a matter of contract," Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc., 680 F.3d 118, 121 (1st Cir. 2012) (internal citations and quotations omitted), placing arbitration agreements on an equal footing as other contracts by stating that "an agreement in

---

[7] Additionally they refer to clause number 38, pursuant to which the parties agree that "[i]n the event that it becomes necessary to resort to the courts to enforce any of the rights and/or obligations assumed pursuant to this Contract, the parties stipulate that they will submit to the Commonwealth of Puerto Rico Court of Original Pleas [sic], Bayamón Part." Docket No. 31-2 at p. 11.

Case 3:15-cv-01522-PAD   Document 40   Filed 02/19/16   Page 5 of 7

Francisco J. Masso-Torrellas, *et al.* v. Municipality of Toa Alta, *et al.*
Civil No. 15-1522 (PAD)
Memorandum and Order
Page 5

writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2.

A court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims. Escobar-Noble, 680 F.3d at 121  (internal citations and quotations omitted).  Once such a determination has been made, however, it must direct the parties to arbitrate all "issues as to which an arbitration agreement has been signed." Id. (quoting, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

**B. Mediation and the FAA[8]**

The FAA itself does not define "arbitration." Fit. Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004) (so noting)(citing, Harrison v. Nissan Motor Corp in U.S.A., 111 F.3d 343, 350 (3d Cir. 1997)).  Whether the mediation provision here should be so considered depends on "how closely the specified procedure resembles classic arbitration and whether treating the procedure as arbitration serves the intuited purposes of Congress." Fit. Tech, Inc., 374 F.3d at 7.

To that end, as the First Circuit noted in Fit. Tech, Inc., some circuits have declined to treat an agreement for non-binding arbitration as "arbitration" within the meaning of the FAA. Id. at 7 and cases cited therein.  By contrast, where the agreement makes the remedy "final," and other

---

[8] Interestingly, the parties do not discuss this issue. While defendants treat and analyze the clause as one compelling *arbitration*, plaintiff merely clarify – without elaboration - that the parties agreed to exhaust an alternative dispute resolution method (mediation), and state - in a conclusory way - that the claims in the Complaint "surpass the scope of the contracts" (Docket No. 34 at p. 26). They further claim, again in a conclusory fashion, that defendants waived mediation in undertaking the illegal measures detailed in the complaint. Id. at p. 27.  Yet federal policy strongly favors arbitration.  Waiver is not to be lightly inferred. Thus, reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration. In Re Tyco Intern. Ltd. Securities Litigation, 422 F.3d 41 (1st Cir. 2005). And no waiver can be inferred from the fact that the Municipality allegedly terminated the agreement.

Case 3:15-cv-01522-PAD   Document 40   Filed 02/19/16   Page 6 of 7

Francisco J. Masso-Torrellas, et al. v. Municipality of Toa Alta, et al.
Civil No. 15-1522 (PAD)
Memorandum and Order
Page 6

common incidents of arbitration of a contractual dispute are present – an independent adjudicator, substantive standards, and an opportunity for each side to present its case – it is arbitration in everything but name.  Id.[9]

The agreements here contain a broadly worded mediation clause specifically providing that the parties have to exhaust mediation *before* filing suit, if there is any controversy arising from the interpretation or of *any* other nature among the parties with respect to any matter related to the contract.  Also, the clause allows the parties to appoint the mediator, and divide the expenses related to the mediation process.  And at least one of the agreements specifically considers the mediator's decision final.[10]

In context, the alternate dispute resolution process contemplated by the agreements resembles classic arbitration.  To conclude otherwise would not only frustrate the FAA's purpose but also contravene Puerto Rico law – which governs disputes arising under the agreement[11] – under which the obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their terms.  P.R. Laws Ann. tit. 31 § 2994.  As such, the parties must comply with the obligation to mediate their claims before pursuing claims in a judicial forum.

---

[9] See also, Harrison, 111 F.3d at 350 (noting that "the essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator."); Evanston Insurance Co. v. Cogswell Properties, LLC, 683 F.3d 684, 693 (6th Cir. 2012) (pointing out that "central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute"); AMF, Inc. v. Brunswick Corp., 621 F.Supp.456, 460 (E.D.N.Y. 1985)("Arbitration is creature of contract, a device of the parties rather than the judicial process.  If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration"). In the same way, the court in Holick v. Cellular Sales of New York, 2013 WL 1336608 (N.D.N.Y. 2013)(vacated in part, on other grounds by Holick v. Cellular Sales of New York, 559 F.Appx. 40, 43 (2d Cir. 2014)) had to decide whether plaintiff's claim was subject to a contractual requirement that the parties *mediate* before filing a lawsuit. Relying on the FAA, the court ordered mediation after evaluating the question as if it had arisen under an arbitration provision.

[10] Neither party has questioned the validity of the agreements.

[11] See, Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005) (noting that in general, state law governs disputes arising under an arbitration agreement) and Clause Thirty Six (36) of both agreements at issue, providing that the agreements will be interpreted in accordance with Puerto Rico laws and regulations.

Francisco J. Masso-Torrellas, *et al.* v. Municipality of Toa Alta, *et al.*
Civil No. 15-1522 (PAD)
Memorandum and Order
Page 7

### IV.   CONCLUSION

For the reasons stated, defendants' motion to dismiss is GRANTED.

**SO ORDERED**.

In San Juan, Puerto Rico, this 19th day of February, 2016.

                                                  s/Pedro A. Delgado-Hernández
                                                  PEDRO A. DELGADO-HERNÁNDEZ
                                                  United States District Judge